Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRIAN WILLIAM KRUSE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JP MORGAN CHASE BANK, N.A.** *et al.*,<br><br>**Defendants.** | **Civil Action No.: 23-4530 (ES) (MAH)**<br><br>**OPINION** |

SALAS, DISTRICT JUDGE

Plaintiff Brian William Kruse ("Plaintiff") filed this action asserting state law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (D.E. No. 1-2, Ex. B to D.E. No. 1 ("Amended Complaint" or "Am. Compl.")). Before the Court is JP Morgan Chase Bank N.A.'s ("Chase" or "Defendant") motion to dismiss the Amended Complaint. (D.E. No. 6 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendant's Motion is **GRANTED**, and Plaintiff's Amended Complaint is dismissed *with prejudice*.

## I.     BACKGROUND

### A.     Factual Allegations

According to the Amended Complaint, as of December 2, 2021, Plaintiff had been a customer of Chase for more than fifteen years and was the sole account holder of a checking account with Chase. (Am. Compl. ¶¶ 8–9). Plaintiff alleges that the terms and conditions related

1

to his checking account were set forth in a Deposit Account Agreement. (*Id.* ¶ 10). According to the Amended Complaint, on December 2, 2021, Plaintiff went to the Hawthorne Branch of Chase in New Jersey and requested that a wire transfer be sent transferring all funds from his checking account to a recipient's bank located in southern California. (*Id.* ¶ 12). "Plaintiff executed a Wire Transfer Agreement provided by Chase at that time." (*Id.* ¶ 13). The amount of the transfer was allegedly $89,100.00, which comprised "the entire balance of Plaintiff's checking account with Chase." (*Id.* ¶ 14).

On December 2, 2021—the same day the wire transfer was executed—Plaintiff allegedly discovered that he had fallen victim to an elaborate fraud. (*Id.* ¶ 18). Upon learning of the fraud, Plaintiff claims that he immediately made multiple requests to employees at Chase to contact the recipient's bank and stop the wire transfer. (*Id.* ¶ 18). Plaintiff alleges that Chase employees refused to contact the recipient's bank in violation of the terms of the Wire Transfer Agreement. (*Id.* ¶ 19). He further claims that no employee attempted to utilize a stop and recall service known as "SWIFT," which enables bank wire transfers to be halted immediately. (*Id.* ¶ 20). According to the Amended Complaint, on December 3, 2021, Plaintiff returned to the Hawthorne Branch and requested that Chase employees contact the recipient's bank. (*Id.* ¶ 21). Plaintiff alleges that Chase employees refused to contact the recipient's bank and advised Plaintiff that there was nothing they could do on Plaintiff's behalf. (*Id.*). Later that same day, Plaintiff alleges that he communicated with a representative from Chase's "Executive Office" who also refused to contact the recipient's bank. (*Id.* ¶ 22). Additionally, Plaintiff claims that Chase "wrongfully concluded that [he] was a participant in the fraud and intentionally transferred all his money" to the recipient's bank. (*Id.* ¶ 39). Plaintiff alleges that Chase finally initiated a wire recall request on December 7,

2021, at which time the funds had already been withdrawn from the recipient's bank account.  (*Id.* ¶ 25).  Plaintiff alleges that he has never recovered any portion of the transferred funds.  (*Id.* ¶ 26).

Plaintiff argues that Chase had a contractual obligation to contact the recipient's bank on December 2, 2021, the same day the wire transfer was sent, or the following morning on December 3, 2021, but refused to do so in violation of its agreements with Plaintiff—i.e., the (i) Deposit Account Agreement and (ii) Wire Transfer Agreement.  (*Id.* ¶ 24).  Plaintiff alleges that Defendant breached the Deposit Account Agreement "through its refusal to reverse, freeze, or delay the transfer of funds, or to even contact the bank with[in] a reasonable amount of time."  (*Id.* ¶ 28).  Further, to support his allegations that Defendant breached the Wire Transfer Agreement, Plaintiff points to Paragraph 3(b) of the Wire Transfer Agreement, which states:

> once you have submitted a wire transfer for the current business day, you cannot cancel it after we've begun processing, but you *may* request us to attempt to return the funds to you.  If the recipient bank agrees, your funds *may* be returned to you, but likely not the full amount that was originally sent.

(*Id.* ¶ 15) (emphasis added).  Plaintiff also points to paragraph 3(c) of the Wire Transfer Agreement, which states:

> [o]nce a wire transfer has begun processing, we will not be able to change any type of wire transfer requests unless the recipient's bank agrees … [i]f the recipient's bank declines to change the wire transfer request you will be responsible for the transfer you initially requested.

(*Id.* ¶ 16).  He further points out that "Chase's own website, under the topic labeled 'How to Wire Money' states that '*domestic wire transfers are often processed within 24 hours*.'"  (*Id.* ¶ 17).

**B.    Procedural History**

Plaintiff initiated this action in the Superior Court of New Jersey on May 5, 2023, asserting claims against Defendant Chase, including for (i) breach of contract (Count I) and (ii) breach of

the implied covenant of good faith and fair dealing (Count II).  (D.E. No. 1-1, Ex. A to D.E. No. 1 ("Complaint" or "Compl.")).[1]  Defendant moved to dismiss the Complaint for failure to state a claim upon which relief could be granted and on July 21, 2023, the Honorable Vicki A. Citrino, Superior Court Judge, granted Defendant's motion to dismiss and dismissed Plaintiff's Complaint without prejudice.  (*See* D.E. No. 6-6, Ex. B to D.E. No. 6 ("Superior Court Opinion" or "SCO")). First, the Superior Court found that Plaintiff failed to state a claim for breach of contract with respect to the Deposit Account Agreement and Wire Transfer Agreement.  (SCO at 3–4).  Though Plaintiff alleged that Defendant "exercised unfair discretion with regard to [its] contractual performance, including . . .  the incompleteness of its 'internal review' and [its] refusal to freeze, reverse or delay the transfer of funds," the Superior Court noted that Chase was not *required* to stop a wire transfer if it suspected fraud under the terms of the Deposit Account Agreement.  (SCO at 3).  Further, the Superior Court noted that neither the Deposit Account Agreement nor the Wire Transfer Agreement specified a timeline within which Defendant would need to contact the recipient's bank in order to comply with the agreements.  (*Id.*).  And the court explained that Plaintiff admitted that Chase initiated a wire recall request on December 7, 2021, in compliance with the terms of the Wire Transfer Agreement.  (*Id.*).  As such, the Superior Court concluded that the breach of contract claim against Chase must be dismissed.  (*Id.* at 3–4).  Second, the Superior Court found that Plaintiff failed to state a claim for breach of the implied covenant of good faith and fair dealing against Chase because Plaintiff failed to set forth any allegations that Defendant

---

[1]    Plaintiff originally sued Defendants Chase, Michael Mangine, and Victor M. Vasquez, employees who allegedly worked at the Hawthorne Branch of Chase, for breach of contract and breach of the implied covenant of good faith and fair dealing.  (Compl. at 6–9).  Additionally, Plaintiff brought a claim against Michael Mangine and Victor M. Vasquez for "assisting in the breach of Chase Bank's obligations" and a claim against Chase for negligent training and supervision.  (*Id.*).  Plaintiff no longer asserts claims against Michael Mangine and Victor M. Vasquez in his Amended Complaint.  (*See* Am. Compl.).  Nor does he assert any claims against Chase for negligent training and supervision in his Amended Complaint.  (*See id.*).

acted with a "bad motive or intention or that, even if Chase may have acted unreasonably, it did so with the objective of preventing Plaintiff from receiving his benefits of protection for the deposit account." (*Id.* at 4).

On August 9, 2023, Plaintiff filed an Amended Complaint in the Superior Court of New Jersey alleging two causes of action against Defendant:(i) breach of contract and (ii) breach of the implied covenant of good faith and fair dealing. (*See* Am. Compl. ¶¶ 27–41). On August 15, 2023, Defendant removed the case to this Court. (D.E. No. 1). On August 28, 2023, Defendant moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Motion; D.E. No. 6-4 ("Mov. Br.")). The Motion is fully briefed. (D.E. No. 9 ("Opp. Br.") [2] & D.E. No. 10 ("Reply")).

## II.   LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v.*

---

[2]   Plaintiff timely filed an Opposition Brief on September 18, 2023. (D.E. No. 8). On September 21, 2023, Plaintiff filed another Opposition Brief, which appears to be substantively identical to the opposition brief that was filed on September 18, 2023, but for differences in formatting. (D.E. No. 9). Because both submissions are nearly identical, the Court considers both submissions and, unless otherwise noted, the Court cites to the September 21, 2023, submission as the Opposition Brief. (D.E. No. 9 ("Opp. Br.")).

*Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that pursuant to Rule 12(b)(6) the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).  Thus, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

## III.    DISCUSSION

### A.    Breach of Contract

In Count I, Plaintiff brings a claim against Defendant for breach of contract.  (Am. Compl. ¶¶ 27–32).  More specifically, Plaintiff alleges that Defendant breached (i) the Deposit Account Agreement and (ii) the Wire Transfer Agreement.  (*Id.*).  Both parties agree that the Deposit

Account Agreement and Wire Transfer Agreement (collectively, the "Agreements") govern the relationship between Plaintiff and Chase.  (Am. Compl. ¶¶ 10 & 13; Mov. Br. at 6).  Defendant argues that Plaintiff fails to state a claim for breach of contract because Defendant fully complied with the terms of the Agreements.  (Mov. Br. at 6–9).  The Court considers whether Plaintiff has alleged a breach of the Deposit Account Agreement and/or the Wire Transfer Agreement in turn. For the reasons set forth below, the Court finds that Plaintiff has failed to plead sufficient facts to state a claim for breach of either Agreement.

"To establish a breach of contract claim under New Jersey law, a plaintiff must show that: (1) 'the parties entered into a valid contract,' (2) 'the defendant failed to perform his obligations under the contract,' and (2) [ ]he 'sustained damages as a result.'"  *Ensey v. Gov't Employers Ins. Co.*, 663 F. App'x 172, 176 (3d Cir. 2016) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007)).[3]  When evaluating a breach-of-contract claim, "[t]he court determines what obligations the parties owed each other, often by interpreting the express contract, and decides if one party failed to do what it promised."  *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 373 (D.N.J. 2021) (citing *Woytas v. Greenwood Tree Experts, Inc.*, 206 A.3d 386, 392 (N.J. 2019)).  "Contract interpretation is usually a question of law in New Jersey."  *SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 159 (3d Cir. 1996) (citing *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 767 F.2d 43, 47 (3d Cir. 1985)).  "Under New Jersey law, courts should interpret a contract considering 'the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction.'"  *Id.*  In doing so, the court is first tasked with evaluating whether a contract is clear or ambiguous.  *See Fed Cetera, LLC v. Nat'l*

---

[3]      There is no dispute that New Jersey law governs Plaintiff's breach of contract claim.  *See Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 n.22 (3d Cir. 2013). Plaintiff and Defendant both cite to New Jersey law to support their breach of contract arguments.  (Opp. Br. at 7–10; Mov. Br. at 6–11).  As such, the Court applies New Jersey law in evaluating Plaintiff's claims.

*Credit Servs.*, Inc., 938 F.3d 466, 469 (3d Cir. 1996) (applying New Jersey law and finding that "whether a contract is clear or ambiguous is a question of law").  The court may rule on the interpretation of a contract on a motion to dismiss only when the contract is unambiguous.  *Wells Fargo Bank, N.A. v. Lichter Gateway IV, LLC*, No. 17-2036, 2017 WL 5957072, at *20 (D.N.J. Dec. 1, 2017).  To determine whether a contract is ambiguous, the court may "'consider the words of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings.'"  *Newport Assocs. Dev. Co. v. Travelers Indem. Co. of Illinois*, 162 F.3d 789, 792 (3d Cir. 1998) (quoting *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 151 (3d Cir. 1992)).  "'[W]hen the terms of [a] . . . contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties.'"  *Mylan Inc. v. Smithkline Beecham Corp.*, No. 10-4809, 2010 WL 4181139, *2 (D.N.J. Oct. 20, 2010) (quoting *Kampf v. Franklin Ins. Co.*, 161 A.2d 717, 720 (N.J. 1960)).

### i.   Deposit Account Agreement

Plaintiff alleges that Defendant breached its contractual obligations under the Deposit Account Agreement by failing to "freeze, reverse, or delay the transfer of funds, or to even contact the recipient bank with[in] a reasonable amount of time." (Am. Compl. ¶¶ 28 & 31).  Defendant contends that Plaintiff has failed to state a claim for breach of the Deposit Account Agreement because Defendant fully complied with the terms of that agreement.  (Mov. Br. at 8–9).  In Opposition, Plaintiff fails to set forth any argument to support his contention that Defendant allegedly breached the Deposit Account Agreement.  (*See generally* Opp. Br.).  For the reasons set forth below, the Court finds that Plaintiff has failed to state a claim for breach of contract based on the Deposit Account Agreement.

Here, it is undisputed that the Deposit Account Agreement is a valid contract between the parties.  Nevertheless, Plaintiff has failed to allege that Defendant failed to fulfill its obligations under the Deposit Account Agreement.  To support his contention that Defendant breached the Deposit Account Agreement, Plaintiff alleges that Chase "refus[ed] to freeze, reverse, or delay the transfer of funds, or to even contact the bank with[in] a reasonable amount of time." (Am. Compl. ¶ 28).  Though Plaintiff does not point to any specific provision in the Deposit Account Agreement to support his breach of contract claim, he appears to be referencing a provision in the agreement which provides as follows with regards to wire transfers: "[w]e *may* refuse, freeze, refuse or delay any specific withdrawal, payment or transfer of funds from your account . . . [if] [w]e suspect that you may be a victim of a fraud, scam or financial exploitation, even though you authorized the transaction(s)." (D.E. No. 6-2, Ex. 1 to D.E. No. 6-1 ("Ragosa Decl.") at 21 (emphasis added)).[4]

Plaintiff has failed to plausibly show that Defendant breached the Deposit Account Agreement.  Plaintiff does not dispute that he initiated a valid wire transfer. (Am. Compl. ¶¶ 12 & 13; Mov. Br. at 9).  As Defendant points out, the Deposit Account Agreement does not impose any affirmative obligation on Chase to intervene in a wire transfer that has been validly authorized, nor does it require the bank to take action to stop wire transfers when fraud is suspected within a specific timeframe.  Rather, the agreement merely provides that Chase "*may* refuse, freeze, refuse or delay any specific withdrawal, payment or transfer of funds" if it suspects that its customer "may be a victim of a fraud, scam or financial exploitation, even though [the customer] authorized the transaction(s)." (Ex. 1 to Ragosa Decl. at 21 (emphasis added)).  In fact, when dismissing

---

[4]    The Court may consider the Deposit Account Agreement that is attached to Defendants' motion to dismiss because that document forms the basis of Plaintiff's breach of contract claim and as such is integral to the Amended Complaint. (*See* Am. Compl. ¶ 31); *Buck*, 452 F.3d at 260 ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (cleaned up)).

Plaintiff's original Complaint, the Superior Court noted that while "Chase stated that it may block a transaction if it suspects fraud, [] it is not required to, per the Deposit Account Agreement." (SCO at 3).  The Court agrees with this assessment.  Plaintiff does not otherwise set forth any argument in his Opposition Brief to show how Defendant breached the Deposit Account Agreement or explain why this Court should depart from the reasoning employed by the Superior Court.  *See, e.g., Cobb v. George Weston Bakers Distribution, Inc.*, No. 10-0676, 2012 WL 2344452, at *3 (D.N.J. June 19, 2012) (stating that a decision of a state court prior to removal constitutes the "law of the case" that the court can reconsider if: "(1) there has been an intervening change in law; (2) new evidence has become available; or (3) reconsideration is necessary to prevent clear error or a manifest injustice.").  And there is nothing else alleged in the Amended Complaint to plausibly indicate that Defendant breached the Deposit Account Agreement.  As such, insofar as Plaintiff brings a claim for breach of contract based on the Deposit Account Agreement, that claim must be dismissed.

> ### ii.    Wire Transfer Agreement

Plaintiff next alleges that Defendant breached its contractual obligations under the Wire Transfer Agreement by (i) refusing to contact the recipient bank after Plaintiff informed Defendant of the fraud that had occurred, and (ii) waiting until six days after the wire transfer had been sent before finally attempting to contact the recipient bank.  (Opp. Br. at 3; Am. Compl. ¶¶ 27–32).  To support his theory of breach, Plaintiff refers to the following provisions in the Wire Transfer Agreement:

> Paragraph 3(b) Canceling: . . . once you have submitted a wire transfer for the current business day, you cannot cancel it after we've begun processing, but you may request us to attempt to return the funds to you.  If the recipient bank agrees, your funds may be returned to you, but likely not the full amount that was originally sent.

> Paragraph 3(c) Modifying: Once a wire transfer has begun
> processing, we will not be able to change any type of wire transfer
> requests unless the recipient's bank agrees.  If the recipient's bank
> declines to change the wire transfer request you will be responsible
> for the transfer you initially requested.

(Am. Compl. ¶¶ 15–16; *see also* D.E. No. 6-3, Ex. 2 to Ragosa Decl. ¶¶ 3(b)–(c)).[5]  Defendant once again contends that Plaintiff has failed to state a claim for breach of the Wire Transfer Agreement because it fully complied with the terms of that agreement.  (Mov. Br. at 7).  The Court considers Plaintiff's two theories of breach in turn.

It is undisputed that the Wire Transfer Agreement is a valid contract between the parties.  Nevertheless, Plaintiff has failed to allege that Defendant failed to fulfill its obligations under the Wire Transfer Agreement.

First, Plaintiff alleges that Defendant breached its contractual obligations under the Wire Transfer Agreement by failing to freeze or reverse the transfer of funds and by refusing to contact the recipient's bank after Plaintiff informed it that fraud had occurred.  (Am. Compl. ¶¶ 28–29; Opp. Br. at 3).  The Court disagrees.  As stated, the Wire Transfer Agreement provides that "[o]nce a wire transfer has begun processing, we will not be able to change any type of wire transfer requests *unless the recipient's bank agrees*," and that "once you have submitted a wire transfer request for the current business day, you cannot cancel it after we've begun processing, but you may request us to attempt to return the funds to you," but "[i]f the recipient's bank declines to change the wire transfer request, you will be responsible for the transfer you initially requested." (*See* Ex. 2 to Ragosa Decl. ¶¶ 3(b)–(c) (emphasis added)).  Here, Plaintiff's own allegations indicate that on December 7, 2021, Defendant *did* contact the recipient's bank in an attempt to

---

[5]      As with the Deposit Account Agreement, the Court may consider the Wire Transfer Agreement that is attached to Defendants' motion to dismiss because that document forms the basis of Plaintiff's breach of contract claim and as such is integral to the Amended Complaint. (*See* Am. Compl. ¶¶ 15–16); *Buck*, 452 F.3d at 260.

obtain its agreement to return the funds.  (Am. Compl. ¶ 25).  However, the recipient's bank did

not agree to do so, and Chase was therefore unable to reverse the wire transfer.  (*Id.*).  The

provisions of the Wire Transfer Agreement by their own terms did not require Defendant to take

any further action.  (*See* Ex. 2 to Ragosa Decl. ¶¶ 3(b)–(c)).  In fact, as Defendant points out (Mov.

Br. at 9), because the wire transfer was authorized, Chase was obligated, under the terms of the

Wire Transfer Agreement, to honor that transfer request.  Indeed, the Wire Transfer Agreement

specifically states that Plaintiff is "responsible for any wire transfer issued in [Plaintiff's] name."

(*See* Ex. 2 to Ragosa Decl. ¶ 2(a)).  Therefore, Plaintiff's allegations that Defendant breached its

contractual obligations under the Wire Transfer Agreement by refusing to reverse the transfer of

funds and contact the recipient bank are without merit.  *See Green v. AOL*, 318 F.3d 465, 472 (3d

Cir. 2003) (affirming district court's dismissal of breach of contract claim where "'plain language

of the Member Agreement foreclose[d] any claims that AOL breached its obligations'").

Second, Plaintiff alleges that Defendant breached its contractual obligations under the Wire

Transfer Agreement by waiting until December 7, 2021 before attempting to contact the recipient

bank.  (Am. Compl. ¶¶ 25 & 30).  Defendant moves to dismiss this claim, arguing that Chase fully

complied with the terms of the Wire Transfer Agreement because the agreement does not set forth

a specific timeline in which Chase must act to halt a wire transfer or attempt to recall funds.  (Mov.

Br. at 7–8).  In Opposition, Plaintiff argues that even though the Wire Transfer Agreement may

not have explicitly set forth a timeline for contacting a recipient's bank, the terms of the Wire

Transfer Agreement are ambiguous because "the contract is silent as to the timeline" in which

Chase must contact the recipient's bank upon request by a customer.  (Opp. Br. at 7–8).  Because

the agreement is, supposedly, ambiguous, Plaintiff asserts that the Court may consider parol

evidence in interpreting its terms.  (*Id.* at 8–9).  Specifically, Plaintiff asks the Court to consider

language from Chase's website, which states:

> Keep in mind that funds are irrevocable in most cases, so it's important to confirm details such as the recipient's bank account number and contact information carefully when completing a wire transfer.  If you do notice an error, contact your bank or wire transfer service immediately to see if they can still help you make an adjustment or process a cancellation.  After a transfer is complete, the funds are usually available to the recipient for immediate use or withdrawal.  Because scammers often use wire transfer scams to target victims, it's important to avoid giving personal information and bank account details to unfamiliar persons or businesses.
>
> How long does a wire transfer take?
> Domestic wire transfers are often processed within 24 hours . . . .

(Opp. Br. at 6; *see also* Am. Compl. ¶ 17).  Plaintiff seems to assert that this language gave him

an expectation that Chase would act quickly in intervening to halt the wire transfer because Chase's

website states that wire transfers are often completed in twenty-four hours.  (Opp. Br. at 9).  For

the reasons set forth below, the Court finds that that the terms of the Wire Transfer Agreement are

unambiguous and that Plaintiff has failed to state a claim for breach of contract based on the Wire

Transfer Agreement.

Since both parties agree that the Wire Transfer Agreement is valid and enforceable (Am.

Compl. ¶ 13; Mov. Br. at 6), the next step is to determine "whether the contract is ambiguous

concerning the dispute between the parties."  *United States v. Pantelidis*, 335 F.3d 226, 235 (3d

Cir. 2003) (citing *Sumitomo Machinery Corp. of America, Inc. v. AlliedSignal, Inc.*, 81 F.3d 328,

332 (3d Cir. 1996)); *see also Fed Cetera, LLC*, 938 F.3d at 469.  Under New Jersey law, contracts

should be construed according to their plain and ordinary meaning.  *CPS MedManagement LLC v.*

*Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 154 (D.N.J. 2013).  "Clear contractual terms

that are capable of one reasonable interpretation must be given effect without reference to matters

outside the contract." *Stryker Corp. v. Hagag*, No. 21-12499, 2022 WL 3107163, at *21 (D.N.J. Aug. 3, 2022) (internal quotations and citation omitted). "Where a contract is ambiguous, courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." *County of Morris v. Fauver*, 707 A.2d 958, 969 (1998). A contract is ambiguous if it is reasonably susceptible to two interpretations. *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F. Supp. 275, 283 (D.N.J. 1992). A court may examine extrinsic evidence to interpret whether the provision in dispute is ambiguous. *Shafer v. United Gen. Title Ins. Co.*, No. 08-2884, 2009 WL 2058524, at *4 (D.N.J. July 8, 2009). "Such evidence may 'include consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct.'" *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006) (quoting *Kearny PBA Local # 21 v. Town of Kearny*, 405 A.2d 393 (N.J. 1979)). However, a court may not read or enforce contractual provisions in a way that "write[s] a different or better contract for the parties." *Textron Fin.-New Jersey Inc. v. Herring Land Grp., LLC*, No. 06-2585, 2012 WL 1079613, at *16 (D.N.J. Mar. 30, 2012) (quoting *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002)). "A court has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument." *E. Brunswick Sewerage Auth. v. E. Mill Associates, Inc.*, 838 A.2d 494, 497 (App. Div. 2004). Thus, the Court cannot fashion an ambiguity where no ambiguity exists. *CPS MedManagement LLC*, 940 F. Supp. 2d at 154 (citing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Skinner Engine Co.*, 188 F.3d 130, 145 (3d Cir. 1999)).

Here, the Wire Transfer Agreement contains no conflicting provisions regarding the timeline during which Defendant is obligated to contact the recipient's bank.  Nor does it contain any term with respect to timing that could be reasonably interpreted in more than one way. *Kaufman*, 828 F. Supp. at 283 ("An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations.").  Indeed, the Wire Transfer Agreement contains no terms dictating any sort of timeline at all regarding when Defendant is obligated to contact a recipient bank.  Rather, it merely provides that "[o]nce a wire transfer has begun processing, we will not be able to change any type of wire transfer requests *unless the recipient's bank agrees*," and that "once you have submitted a wire transfer request for the current business day, you cannot cancel it after we've begun processing, but you may request us to attempt to return the funds to you," but "[i]f the recipient's bank declines to change the wire transfer request, you will be responsible for the transfer you initially requested."  (*See* Ex. 2 to Ragosa Decl. ¶¶ 3(b)–(c) (emphasis added).  Though Plaintiff contends that the agreement's silence with respect to timing creates ambiguity, the Court is not convinced.  As Defendant points out (Reply at 3–4), mere silence in a contract does not equate to ambiguity.  11 *Williston on Contracts* § 30:4 (4th ed. 2020); *Pearlmont, LLC v. Waterfall, Inc.*, No. A-5057-09T1, 2011 WL 2652154, at *3 (N.J. Super. Ct. App. Div. July 8, 2011) ("While we agree . . . that, as a general proposition of contract law, certain ambiguities will be construed against the drafter of a document, mere silence does not necessarily create that type of ambiguity."); *see also Wang v. Zhang*, 19-21344, 2021 WL 4173855, at *4 (D.N.J. Sept. 14, 2021) ("Subparagraph III(b)'s silence as to thresholds for salary and the duration of employment does not render it ambiguous.  It simply means those conditions are absent."); *cf. Rearick v. Pennsylvania State University*, 416 F. App'x 223, 225 (3d Cir. 2011) ("'[W]hen a contract fails to provide for a specific contingency, it is silent, not ambiguous' and

court should neither consider extrinsic evidence nor 'read into the contract a term . . . which clearly it does not contain.'" (quoting *Seven Springs Farm, Inc. v. Croker*, 748 A.2d 740, 744 (Pa. Super. Ct. 2000))).  And it is not the function of this Court to make a better contract for the parties by supplying terms that have not been agreed upon and that the Superior Court previously found did not exist.  *Schenck v. HJI Associates*, 685 A.2d 481, 484 (App. Div. 1996), *certif. denied*, 692 A.2d 48 (1997); *Textron*, 2012 WL 1079613, at *16.

Further, as Defendant points out, when the Wire Transfer Agreement chose to specify a time period with respect to certain obligations of the parties, it explicitly did so.  (Reply Br. at 4). For example, the Wire Transfer Agreement states "[y]ou may request a future dated (one-time) domestic wire transfer up to 10 business days from the current business day's cutoff time."  (Ex. 2 to Ragosa Decl. ¶ 5).  The presence of specific timelines in other provisions of the Wire Transfer Agreement supports the proposition that the drafters could have agreed to set forth a specific timeline in which Chase must act to halt a wire transfer or attempt to recall funds, but chose not to do so.  *See, e.g.*, *G. Pacillo Contracting, Inc. v. Twp. of S. Orange Vill.*, No. A-5776-06T1, 2008 WL 2811540, at *5 (N.J. Super. Ct. App. Div. July 23, 2008) ("On the other hand, although the parties could also have agreed to modify the arbitration provision . . . by allowing for resort to the courts or some other final arbiter, they chose not to do so inasmuch as [the agreement] is silent in this respect.").

Where, as here, the Court deems a contract clear, New Jersey law is straightforward: the contract must be enforced as written.  *See Giaccone v. Canopius U.S. Ins. Co.*, 133 F. Supp. 3d 668, 673–74 (D.N.J. 2015) (citing *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d. Cir. 2013) ("[T]he Supreme Court of New Jersey has repeatedly instructed that clear and unambiguous contracts leave no room for interpretation or

construction and must be enforced as written.")).   As discussed above, the Wire Transfer Agreement provides that "[o]nce a wire transfer has begun processing, we will not be able to change any type of wire transfer requests *unless the recipient's bank agrees*," and that "once you have submitted a wire transfer request for the current business day, you cannot cancel it after we've begun processing, but you may request us to attempt to return the funds to you," but "[i]f the recipient's bank declines to change the wire transfer request, you will be responsible for the transfer you initially requested." (*See* Ex. 2 to Ragosa Decl. ¶¶ 3(b)–(c) (emphasis added).  Here, Plaintiff's own allegations indicate that on December 7, 2021, Defendant *did* contact the recipient's bank to attempt to obtain their agreement to return the funds.  (Am. Compl. ¶ 25).  However, the recipient's bank did not agree to do so, and as such, Chase was unable to reverse the wire transfer.  (*Id.*).  And there is nothing within the language of the Wire Transfer Agreement to indicate that Chase breached its contractual obligations under the agreement by failing to contact the recipient's bank on the "same day the wire transfer was sent, or the following morning," as Plaintiff alleges.  (*Id.* ¶ 24; Ex. 2 to Ragosa Decl. ¶¶ 3(b)–(c))).  In fact, when dismissing Plaintiff's original Complaint, the Superior Court emphasized that "Plaintiff admits that Chase initiated a wire recall request on December 7, and thus it complied with Plaintiff's request and the Wire Transfer Agreement.  There was, however, no timeframe within which such action was to be taken.  Accordingly, the breach of contract claim must be dismissed against Defendants." (SCO at 3–4).  The Court agrees with this assessment and finds that the same conclusion is warranted with respect to Plaintiff's Amended Complaint.   *See, e.g., Cobb*, 2012 WL 2344452, at *3 (stating that a decision of a state court prior to removal constitutes the "law of the case").  Further, Plaintiff does not dispute that he authorized the wire transfer.  (*See* Am. Compl. ¶¶ 12–13).  As stated above, because the wire transfer was authorized, Chase was obligated, under the terms of the Wire

Transfer Agreement, to honor that transfer request.  Indeed, the Wire Transfer Agreement specifically states that Plaintiff is "responsible for any wire transfer issued in [Plaintiff's] name." (*See* Ex. 2 to Ragosa Decl. ¶ 2(a)).  Thus, under the terms of the underlying contract itself, Plaintiff's breach of contract claim based on the Wire Transfer Agreement is subject to dismissal.

As discussed above, Plaintiff suggests that the Court should consider language from Chase's website in interpreting the Wire Transfer Agreement.  (Opp. Br. at 6–9).  However, "[c]]lear contractual provisions 'must be given effect without reference to matters outside the contract." *Giaccone*, 133 F. Supp. 3d at 674 (citation omitted).  Nevertheless, even if the Court did consider the Chase website language, Plaintiff's claim still fails.  Plaintiff offers language from Chase's website which states that "[i]f you do notice an error, contact your bank or wire transfer service immediately to see if they can still help you make an adjustment or process a cancellation. After a transfer is complete, the funds are usually available to the recipient for immediate use or withdrawal" to support his position that the agreement is ambiguous and that Defendant breached the Wire Transfer Agreement by failing to contact the recipient bank immediately.  (Opp. Br. at 6).  Plaintiff also offers language from Chase's website which states that domestic wire transfers are "often processed within 24 hours" to support his contention that he had an expectation that Chase would act more quickly than it did in contacting the recipient bank.  (Am. Compl. ¶ 17; Opp. Br. at 6).  However, this language too does not impose any affirmative obligation on Chase to contact a recipient's bank within any specified timeline; rather, the language simply suggests customers contact Chase to "see *if* they can" help regarding a transaction.  (Opp. Br. at 6).

Therefore, insofar as Plaintiff brings a claim for breach of contract based on the Wire Transfer Agreement, that claim must be dismissed.[6]

---

[6]    In his Complaint and Opposition Brief, Plaintiff contends that no employee attempted to utilize a stop and recall service known as "SWIFT," which enables bank wire transfers to be halted immediately.  (Am. Compl. ¶ 20;

**B.      Implied Covenant of Good Faith and Fair Dealing**

In Count II, Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by failing to contact "the recipient's bank as soon as possible to try to freeze, halt, cancel, or rescind the wired funds."  (Am. Compl. ¶ 37).  To support this claim, Plaintiff alleges that Chase "wrongfully concluded that Plaintiff was a participant in the fraud and intentionally transferred all his money to a stranger's cryptocurrency account."  (*Id.*  ¶ 39).  Defendant moves to dismiss this claim because Plaintiff fails to plead any facts suggesting bad faith or improper motive on Chase's part.  (Mov. Br. at 9).  Plaintiff opposes, arguing that Chase employees acted in bad faith by accusing Plaintiff of colluding with the fraudster and by intentionally refusing to contact the recipient bank within a reasonable timeframe.  (Opp. Br. at 9).  For the reasons set forth below, the Court agrees with Defendant.

Under New Jersey law, a covenant of good faith and fair dealing is implicit in every contract and requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (1997).  "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term."  *Hunter v. Sterling Bank, Inc.*, No. 09-0172, 2011 WL 5921388, at *6 (D.N.J. Nov. 28, 2011) (quoting *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (2001)).  In other words, "[e]ven where the express terms of the contract are not violated, a defendant who acts with

---

Opp. Br. at 6).  However, in making this argument, Plaintiff does not cite to any provision in either the Deposit Account Agreement or Wire Transfer Agreement that obligated Chase to use the SWIFT procedure.  (*See generally* Am. Compl.; *see generally* Opp. Br.).  As such, the Court does not consider this argument when evaluating Plaintiff's breach of contract claims.  *See Eprotec Preservation, Inc. v. Engineered Materials, Inc.*, No. 10-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011) ("Failure to allege the specific provisions of contracts breached is grounds for dismissal.").

improper purpose or ill motive can be found liable for breaching the implied covenant if the breach interferes with the plaintiff's reasonable expectations under the agreement." *Shilling v. Reassure Am. Life Ins. Co.*, No. 13-2359, 2015 WL 790143, at *5 (D.N.J. Feb. 25, 2015). "An allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive." *Wilson*, 773 A.2d at 1130. "[A] party exercising its right to use discretion . . . under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." *Id.* However, "the covenant is to be interpreted narrowly, lest it become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements." *Cargill Glob. Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 580 (D.N.J. 2010) (internal quotations and citation omitted). "To state a claim for breach of an implied covenant of good faith and fair dealing, the plaintiff must (i) allege that the defendant's conduct destroyed plaintiff's reasonable expectations and rights to receive the fruits of the contract, and (ii) make a showing of the defendant's bad motive or intention." *Cryofab, Inc. v. Precision Med., Inc.*, No. 08-1236, 2008 WL 2705007, at *3 (D.N.J. July 8, 2008) (internal quotation marks and citations omitted).

Here, Plaintiff has failed to sufficiently allege bad motive or intention to sustain his claim for breach of the implied covenant of good faith and fair dealing. Even assuming that Defendant indeed "wrongfully concluded that Plaintiff was a participant in the fraud," as the Court must do at this stage (*see* Am. Compl. ¶ 39), Plaintiff does not allege any facts to indicate that, even if Chase bank employees acted unreasonably, they did so in bad faith, with the objective of preventing Plaintiff from receiving his benefits of protection under the relevant Agreements. In

20

fact, as described above, although the Deposit Account Agreement does not impose any affirmative obligation on Chase to intervene in a wire transfer that has been validly authorized and neither agreement obligated Defendant to contact the recipient's bank within any specified timeline, Defendant did contact the recipient's bank on December 7, 2021. (*Id.* ¶ 25). As Defendant points out (Reply at 7), such actions do not plausibly indicate that Defendant "destroyed Plaintiff's reasonable expectations and right to receive the fruits of the contract," nor do they "make a showing of the [D]efendant's bad motive or intention." *Cryofab, Inc.*, 2008 WL 2705007, at \*3 (internal quotation marks and citations omitted). In fact, when dismissing Plaintiff's original Complaint, the Superior Court found that Plaintiff failed to state a claim for breach of the implied covenant of good faith and fair dealing against Chase because Plaintiff failed to set forth any allegations that Defendant acted with a "bad motive or intention or that, even if Chase may have acted unreasonably, it did so with the objective of preventing Plaintiff from receiving his benefits of protection for the deposit account." (SCO at 4). Plaintiff has failed to cure the deficiencies outlined by the Superior Court. Accordingly, Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing and the claim must be dismissed. *See Block v. Jaguar Land Rover N. Am., LLC*, No. 15-5957, 2016 WL 3032682, at \*6 (D.N.J. May 26, 2016) ("The Amended Complaint does not plead sufficient facts to make plausible a claim that Jaguar acted *with the objective of preventing* [p]laintiffs from receiving their reasonably expected fruits under the contract. Nor does the Amended Complaint allege facts supporting the inference that Jaguar unilaterally destroyed [p]laintiffs' expectations under the contract without legitimate purpose. Jaguar's motion to dismiss the Fourth Count will be granted.") (emphasis added).

The fact that Plaintiff alleges economic damages in the amount of $89,100 (Am. Compl. ¶ 14), does not alter this conclusion. "'Without bad motive or intention, discretionary decisions that

happen to result in economic disadvantage to the other party are of no legal significance'" in making a claim for breach of the covenant of good faith and fair dealing. *Adler Eng'rs, Inc. v. Dranoff Props., Inc.*, No. 14-921, 2014 WL 5475189, at *11 (D.N.J. Oct. 29, 2014) (quoting *Wilson*, 773 A.2d at 1130). As discussed above, neither the Deposit Account Agreement nor the Wire Transfer Agreement set forth any timeline during which Chase was obligated to contact the recipient's bank. Although Chase's failure to act immediately may have disadvantaged Plaintiff, economic loss is not sufficient to establish bad motive or intention. It is not enough "to infer bad intentions from bad consequences." *Adams v. Allstate Life Ins. Co.*, No. 16-9465, 2018 WL 1634394, at *2 (D.N.J. Apr. 5, 2018); *see also Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006) ("[A]s we indicated . . . in a point the Supreme Court of New Jersey has approved . . . , the covenant should not be construed 'too broadly' as it 'could become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements.'"). And Plaintiff cannot "now rewrite the contract, impose new standards, or get more than it bargained for through application of the implied covenant of good faith and fair dealing." *18W Holdings, Inc. v. Sing for Serv., LLC*, No. 20-15007, 2021 WL 6125801, at *4 (D.N.J. Dec. 27, 2021); *see also In re Petersburg Regency LLC*, 540 B.R. 508, 542 (Bankr. D.N.J. 2015) (observing that "the duty of good faith and fair dealing . . . may not be used to make a better deal for a party [than the one] that he or she negotiated" (citing *Glenfed Fin. Corp. v. Penick Corp.*, 647 A.2d 852, 857–58 (N.J. Super. Ct. App. Div. 1994))).

## C.    Amendment

Finally, Defendant contends that Plaintiff's Amended Complaint should be dismissed with prejudice because any further amendment would be futile and/or inequitable. (Mov. Br. at 11).

Plaintiff does not respond to these arguments.  For the reasons set forth below, the Court finds that dismissal with prejudice is appropriate.

Denial of leave to amend is warranted in cases of "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'"  *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining & Mineral Co.*, 615 F.3d at 175).

Here, the Court finds that a dismissal with prejudice is appropriate due to Plaintiff's failure to cure deficiencies by amendments previously allowed as well as the futility of further amendment.  To start, Plaintiff has already been afforded one opportunity to amend his pleadings by the Superior Court and has again failed to overcome the pleading deficiencies identified in his original Complaint.  (*See generally* SCO).  Plaintiff's Amended Complaint does not provide any support for his breach of contract claims, and there are no allegations of bad faith or improper motive to support a claim for breach of the implied covenant of good faith and fair dealing.  Given the lack of allegations, including after amendment, pointing to any potential breaches within the relevant Agreements, the Court finds that further amendment to the Amended Complaint would be futile.  *See Rusciano v. Atl. City*, No. 19-20922, 2021 WL 1138151, at *2–3 (D.N.J. Mar. 24, 2021) (granting defendant's motion to dismiss plaintiff's complaint with prejudice where it would be both inequitable and futile to permit plaintiff the opportunity to amend the complaint because the court had previously allowed plaintiff to file a statement clarifying his claims and plaintiff's attempt to clarify revealed the futility in granting another opportunity to allege sufficient facts).

## IV.   CONCLUSION

Based on the foregoing, Defendants' motion (D.E. No. 6) is **GRANTED** and Plaintiff's Complaint is dismissed *with prejudice*.  An appropriate Order follows.

**Dated:** August 23, 2024                                                          *s/ Esther Salas*
                                                                                                          **Esther Salas, U.S.D.J.**